**HILLSIDE DRILLING INC.,**
**a corporation, Plaintiff–**
**Appellant,**

v.

**CITY OF BERKELEY, Defendant–**
**Appellee.**

No. 02–15767.

D.C. No. CV–99–04646–MMC/EDL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 2003.

Decided June 24, 2003.

Before HUG, GIBSON * and FISHER, Circuit Judges.

MEMORANDUM **

Hillside Drilling, Inc. appeals the grant of summary judgment against its claim that the City of Berkeley's Disadvantaged Business Enterprises ("DBE") program, as applied, imposes an unconstitutional strict quota system.[1] The district court found no basis for municipal liability. The relevant facts are known to the parties and are discussed here only briefly and as necessary. We review the grant of summary

---

\* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Hillside does not challenge the Berkeley program as written, which permits a project to be awarded to contractors who do not meet

judgment de novo, and we affirm. *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir.2002).

■ Hillside contends that Berkeley has an official, though unwritten, policy imposing a quota and that its stated reason for rejecting Hillside's bid is pretext. Berkeley's Bidder–DBE–Information form is confusing and arguably misleading when read without the benefit of the requirements made very explicit in the project specifications. However, this confusion cannot support a reasonable inference that the requirement is pretext. Moreover, no reasonable inference of a quota system may be drawn from the prior contracts awarded, Kenneth Emeziem's deposition testimony, or Berkeley's willingness to waive the requirement in single-bidder situations where doing so is necessary to receive federal funding.[2]

■ Hillside next argues Berkeley may be held liable for the conduct of Jack Pajoohandeh because he was delegated final policymaking authority. We disagree. Pajoohandeh's decisions were "constrained by policies not of [his own] making" and were subject to review by others. *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985–86 (9th Cir.2002); *Christie v. Iopa*, 176 F.3d 1231, 1236–38 (9th Cir. 1999).

■ Hillside alternatively argues the City Council ratified Pajoohandeh's unconstitutional act. Hillside presented no evidence that the City Council or any of Pajoohandeh's supervisors were aware of the allegedly unconstitutional basis for Pahoohandeh's decision. *Christie*, 176 F.3d at 1239. Nor has Hillside presented evi-

dence that the City Council, the Director of Public Works or the City Manager merely rubber stamped Pajoohandeh's decision or were otherwise deliberately indifferent. *Id.* at 1240 (citing *Hammond v. County of Madera*, 859 F.2d 797, 803 (9th Cir.1988)).

Because Hillside cannot establish a basis for municipal liability, summary judgment was properly granted on his section 1983 claim. Moreover, as Hillside acknowledges, its claim under the California Constitution is linked to the survival of its section 1983 claim. Thus, summary judgment on the state law claim is appropriate as well.

AFFIRMED.

---

the DBE goal but who present evidence of a good faith effort to do so.

2. Additionally, Hillside argues that Berkeley Municipal Code § 13.26.50, involving minority employees, is also unconstitutional and that we should infer an unconstitutional DBE subcontractor program from the unconstitution-

ality of this other statute. We do not see how the unconstitutionality of one statute reasonably permits an inference that Berkeley acts unconstitutionally generally or in related areas. In any event, Hillside lacks standing to challenge § 13.26.50.